You can proceed. Thank you. May it please the Court, my name is Shannon Hewitt. I'm here with Jessa Rivera. We're from the Law Offices of Moreno and Rivera. Here on behalf of the appellant, Officer Mike Thurien. At this time I'd like to reserve three minutes for my rebuttal. Three? Yes. Okay. Thank you. May it please the Court. Mr. Luna was incarcerated at the Sacramento County Jail, October 4th of 2001, awaiting trial on charges for violations of Penal Code Section 186, 27. But you don't have a lot of time. I think we're, can I cut you to the chase in terms of from the standpoint that obviously in, it's a 12B6 situation. Actually, Your Honor, it's a motion for summary judgment. I'm sorry, a motion for summary judgment. That if, if you say that he was a TS inmate, you know, that you give the plaintiff that, that he was a TS inmate, and that while he, and that the officer, apparently it's undisputed that the officer called him out to the, called him, did he want to go out and exercise. And a TS inmate by their means that you could only be out there by yourself, correct? And he had been, it's also undisputed, I guess, that he had been designated a Norteno? Actually, Your Honor, he was a, yeah, a Norteno. I mean, that's a northern gang member type. Right. Well, I think, Your Honor, that basically we are not here to argue the merits of the case, but one of the issues was when we're looking at a motion for summary judgment, we have to look at the undisputed issues of fact that the parties have presented. And basically, the undisputed facts of this case, even viewed in most light favorable to Mr. Luna, did not state any constitutional violation by Officer Tureen. As far as the TSEP status, yes, he was classified as a TSEP. However, pursuant to jail policy, Officer Tureen received a classification of other inmates from another floor. And according to the jail policy, he ordered those new inmates to their cells while Luna was showering. All right. But I guess what I'm saying is a TS inmate can only be out there, the designation means you can only be out there by yourself. Well, actually, at the time, the way the policy worked, our understanding is, is that if Luna, if, I'm sorry, if Officer Tureen receives a reclassification of new inmates, that he's to order those inmates to their new cells at that time, regardless if there's another TSEP out on the floor programming. Well, if I understand your position, it is that all you have against your client is that the victim was to be in complete, I don't know the term, but was to be segregated and alone. And at that time, he was to direct these other two prisoners to their cells. And if I understand your position, it is that the mere fact of knowing that the victim was to be separated is not enough to make out a case of deliberate indifference. Am I stating it right, as far as you're concerned? That is the, that's our position on the first error that we think that the district court made. Yes, it is. And what's that, and what is that error? The district court, based on Saucey v. Katz, the first prong of qualified immunity analysis, we have to inquire whether the facts stated in light most favorable to the plaintiff state a constitutional violation. What we're saying here in our very first argument is that the district court erroneously considered mere allegations in this motion for summary judgment, rather than the facts supported by evidence, and based on that, found a disputed issue. Let's take all of that out. You've got a T.S. inmate that's a Norteno. Then you've got while, you've got the officer calling him saying, do you want to go out and program, or whatever you say that, then while he's out in programming, you've got two people that are sent out in the area who were involved in an incident earlier in the day and are being sent here. And the T.S. inmate is a Norteno. The two people that get sent out are Sirenios, correct? Yes, ma'am. I mean, that the court's got in front of it. Well, of course. And what jailers do is, you know, what jailers do is not only do they keep people from escaping from jail, but they also have a responsibility to protect them from other inmates who are there. Now, I'm not saying, you know, why isn't that enough to say, without getting to the second prong on the qualified immunity part of it, why isn't that enough to say, okay, taking all those facts, which I think all those are there in the record. Not getting into, obviously, Mr. Luna says things like, well, I know that they were sending me out there, the gladiator thing and all of that. You know, not getting into any of that. Just limiting to that. Why isn't that enough? Well, Your Honor, I think we need to really emphasize the point that in the party's moving papers on this motion for summary judgment, there was no evidence, there was no facts based on admissible supporting evidence to show that Officer Tureen knew anything about any of these inmates' status as gang members. And those facts that were presented, they were undisputed. But it's also, he's a jailer, he's the only one on there, that's what his job is, and that's what the job of people is. Isn't the plaintiff entitled to that natural inference from that? Not, you know, not putting aside that, you know, I know Officer Tureen says, I didn't know any of that, and that's why it wasn't indifference. And all that would come out at a trial, and they would have to decide, and the plaintiff would say, well, he knew this, or, you know, or whatever he could establish. But why isn't enough from just knowing that and the nature of the fact that it is a custodial institution, and all of those are true. Now, whether he knew that or, you know, can't we, you know, there's one inference from it is that he knew it and he did it with indifference. The other inference is, you know, that you're asking is, or the evidence that you want to present is that he didn't know it, and you would present that at trial. But since it is summary judgment, why isn't the plaintiff entitled to that inference, since he is the jailer, he's the only one there, he's responsible for the inmates, that is, in fact, what their statuses are, and that's what that status requires, why isn't that enough? Well, as I said, Your Honor, because the court was presented with a motion for summary judgment, we had to consider the facts based on the party's moving papers, and not the mere allegations. We submit that on the facts. Have the complaint. Right. Okay. What am I saying that wasn't in any of those? I'm sorry. The facts that I said. If you just limit yourself to that he's a TS inmate, that he's a Norteño, that TS inmates are supposed to only be out there on their own, that the officer called and asked him, do you want to program? While he was out there programming, two Soreños were let out. That doesn't say anything about what the officer knew. It just says what those things are. I'll let you save a little bit of time, but I need to have you answer that. Why isn't that enough? Well, it's not enough because I don't think that we can assume that because the officer is in a position as a custodian, that such that he's it's inferred that he's going to have the knowledge about the gang relationship. But then why do jails even why do they even classify people? You know what? Right. Well, I think you would have that. You know, what would be the point of classifying people if the person that were in charge of them at that point? Why isn't that a natural inference? Well, basically, as I said, that the undisputed facts did not establish that he knew. And we don't think that it's an inference. But even if he didn't know, he knew that his job and the policy was to keep this person separate. Right. Well, Your Honor, as we mentioned earlier, the jail policy at the time required Officer Turin to actually order these newly assigned inmates. There's some policy in the declaration. There's no such policy in the record. Is there? I don't know what that policy is, but seems to be what he's talking about seems to be in conflict with this other policy that the TSM is supposed to be held in isolation. And he violated that policy as clear as can be. So you're asking us to draw this inference in favor of your client that there was some other policy which is not in the record. Your Honor, I want to make it clear that there was no policy on the record that indicated that there can't be more than one TSEP on the floor. That's the nature of the TSEP. Oh, wait a minute. That's not a contested issue, is it? And that wasn't contested below. No, it's not, Your Honor. Well, then it's not a contested issue. So we have to take that issue in favor of the plaintiff. Your Honor, I'd like to reach my two other points the way the Court erred on a qualified immunity basis. Even if this Court decides that Luna stated a constitutional violation, it's very clear that the Court erred on the second prong of qualified immunity analysis in two ways. First of all, the way that it defined the clearly established law was wrong.  All it said was that pretrial detainees are entitled to personal security under the Due Process Clause. However, a state of Ford v. Ramirez Palmer, this Court made it very clear that we have to narrowly define the issue when we're looking at the clearly established law inquiry based on the specific context of the case, based on the facts of the case. The specific context of this case is you have a Norteño and you have two Sereños, and the two Sereños have been involved in some sort of conflict area and they're coming there, and whether there's a substantial risk of injury, right? Your Honor, as we said, that Officer Tureen, there's nothing in the record that the undisputed facts presented show that he did not know, and Luna did not dispute. He didn't even address any of Tureen's undisputed facts. Therefore, it remains undisputed. Tureen did not have knowledge of these inmates' gang affiliations. And so we have to view it in light of what he knew at the time. How can you dispute what someone knows so that they don't know? You know, in the sense that if all it is is he says, I didn't know, and, you know, Luna said, well, you know, there was all sorts of hearsay about things about gladiators and what's going on in the prisons and all of that. But let's just say it's he says he didn't know, and, you know, I mean, what could a person do other If you didn't have something, you know, I mean, what his evidence is, is that officers who are charged with the responsibility of prisoners on their watch, that it's their responsibility to know what their classifications are, who they can put people together. Anyway, we've gone over your time. I'll allow you two minutes for rebuttal, and we'll hear from the other side. May it please the Court, Thomas McCarthy for Benito Luna. Your Honors, there are just a few critical facts that this Court must take as given that demonstrate that it would have been clear to a reasonable prison official that Officer Thurman's conduct placed Luna at a substantial risk of serious harm. Luna's a gang member dropout, a total separation inmate, meaning that he must be kept separate from all inmates at all times. On the night in question, he's in the program area, which means that other inmates must be kept out. Yet, while he was still in the program area, we have inmates Ferrero and Caceres who are members of a rival gang and total separation inmates. You see, let's forget about being a rival gang. All we know about those two guys, according to what we have on the record, is that they were going into the segregated unit. Isn't that right? Well, Your Honor, I think that there is enough information. That's what the district court said. If you look at the district court position, which you've got to defend, he said, That's what you have to defend to have an affirmance. Well, Your Honor, that is certainly what the district court said. However, there are facts in the record from which a fact finder can infer. What facts? Well, there's facts such as these. First of all, inmate files generally carry gang affiliation designation. You're pointing at facts, but there's no showing that this officer had any knowledge of those facts. Your Honor, if I may, the point I'm trying to make is that there's a reasonable inference that can be made from the facts that are here. There is not a fact in the record that says conclusively, yes, this was in Officer Thoren's head. So then the appellants are correct in that there aren't facts. Then on the knowledge component, what do you have to show? On the knowledge of the gang affiliations, Your Honor? Well, I mean, basically they're claiming that the officer didn't know any of the dangers that we're talking about here. I mean, did the officer, is it undisputed that he knew he was a TS? Yes, Your Honor. All right. But it's, I guess, disputed about what the policy is, whether you can put other people, that you can just let someone go out there to go to their cell, which is what. So that's undisputed, but what about the Norteño-Soreno part of it? That's what I'm getting to, Judge Callahan. Luna testified at deposition, and this is in the record, that he first identified his attackers as Sorenos or Southsiders because of their distinguishing tattoos on their bodies. And Luna also remarked that he was identifiable to another person as a Norteño or a former Norteño in his case because of distinguishing tattoos on his body. And that's in the record. Well, what does that mean? Are you saying, you know, we should infer that it's common knowledge within the prison everybody could draw the same inference? Well, Your Honor, I'm saying that it is a reasonable inference that a fact finder could draw that Officer Thurin, who is responsible for movement of these inmates, is aware of such a gang affiliation. Well, I know for a fact that when people go to jail, that they put down what their tattoos are, they do all of the classifications, but you didn't put all that stuff in the record, right? So that's not really something that's not in the record, right? Well, Your Honor, it's correct that Mr. Luna did not put those things specifically in his summary judgment motion. However, they are in the record. They are in, for example, his deposition, which Officer Thurin filed in the excerpts to record at pages 77 or 78. Is it part of what we can consider? Yes, because it is part of the record. Well, Mr. McCarthy, let me ask you this. I mean, couldn't you make a case that you don't even have to show that the officer knew that, you know, these other two that came in were Southern gang members because he had the duty to keep this T.S. inmate separated from everybody else? Absolutely, Judge Tashman. And he, you know, intentionally, in the sense that he did it willfully, violated that policy. Isn't that enough to make your case? I think it is, Your Honor. I mean, clearly, if we can back up a little bit and look at what's required under a deliberate indifference claim, maybe that will help here. The subjective component, all it requires is knowledge of a risk and disregard of that risk. That is an excessive risk to inmate safety. Certainly here, at a minimum, no matter who's looking at the record, I think everyone can agree that Officer Thurman certainly knows that Luna is a total separation inmate. And that designation by itself is an acknowledgment of the fact that it's a risk to put him with anybody anywhere. He's supposed to be kept separate from all inmates at all times. So certainly Officer Thurman knows that, and he disregarded that in allowing Ferrer and Caceres, these transferring inmates, into the program area. Well, it seems to me you've got to go and show that the allowing of the two inmates into the segregated area amounted to a constitutional violation. And that's under the Saucera case. You've got to show first there was a constitutional violation. And to show that, you can't get to the merits, but you have to take the facts and say, okay, it's a constitutional violation for a prison official to allow segregated inmates to be together. And that in and of itself is a constitutional violation. That has to be your position, isn't it? Well, Your Honor, it's not that that's a concern. What's that, Your Honor? I'm trying to find out what you need to show to make out your constitutional violation here. Well, Your Honor, to clarify, our position is not that a violation of this total separation designation is a constitutional violation in all cases. Certainly there may be cases where there's countervailing factors present that weigh in favor of qualified immunity or weigh against the constitutional violation. For example, had this been a case where the inmates had some history of interaction but without incident, that would have been a favor that weighed against the constitutional violation and in favor of qualified immunity. And that's, for example, a key fact that was present in the case of State of Ford. The court noted that, hey, these two inmates had been celled together for an extended period of time and they never had an incident. So that's certainly a factor that can weigh in analysis and a factor that's not here. In fact, what we have here are total separation inmates, all three of them. So you really have to show more than just that you have a TS inmate. I think that's right, Your Honor. Because otherwise, then, any time that, you know, I mean, something wouldn't even have to happen. I mean, you would put someone. Well, Your Honor, your point is correct. I mean, you couldn't run a jail. That's right. And certainly there's circumstances where, you know, when a total separation inmate comes in contact with another inmate, it may not necessarily be a constitutional violation. As I suggested, you know, the one countervailing example I gave was where they have a history of no incidents or nonviolence with each other. Further. Ms. Hewitt also referred to a policy that Officer Thurian, I think, refers to in his declaration. That is that it's okay, it's an exception to that policy if you have to, I think, transport an inmate from one place to another or something like that. Are you familiar with that policy? I'm not familiar with the policy, Judge Tsushima. Officer Thurian states that in his papers, but there's no evidence of it anywhere. And it certainly. Well, the evidence would be his statement. But you're saying there isn't the policies not actually entered into. Right. All we have is. I mean, because that would still be some evidence, wouldn't it? I suppose it would. All we have is Officer Thurian's self-serving declaration that there was some policy that he ordered the inmates pursuant. But we don't know exactly what that policy is. Right. We don't. But we do know that there is the policy of total separation with regard to these inmates. And that's absolutely in the record. Did you take a deposition of the defendant or is it just you relying on what your inmates said and what the police or the guard had to say? I'm simply relying on the record as in the deposition transcripts and the declarations. I was not present for that. No, but there was a deposition taken of the prison official. Not that I'm aware of. All I'm aware of that I've seen in the record, Your Honor, is the simple declaration and affidavits of some of the defendant officials. All right. So, again, what we get back to here is this total separation designation. And that's really the key fact here. I mean, as I mentioned earlier, it's an acknowledgment of the fact that there is a substantial risk whenever any inmates encounter a total separation inmate. And I think it's clear that it would be clear to a reasonable prison official that Officer Thren's conduct placed Luna at a substantial risk of serious harm. Indeed, no reasonable prison official could have thought that Officer Thren's conduct was lawful. And so Luna asked this Court to affirm the denial of qualified immunity. And if I can make one more additional point before I close here, Your Honors, Luna's complaint fairly stated a claim for First Amendment retaliation under 1983. And no defendant in this case has ever raised that point, and the Court below never raised it. Regardless of the disposition of this appeal right now, when this case is returned to the district court, it should be returned with instructions that the court consider the First Amendment claim that's in Luna's complaint. By the way, the plaintiff proceeded pro se in the district court? Yes, Your Honor. And there's no way that he's going to ever get anywhere if we remand this unless there's an attorney appointed for him. Is that about Sizeman? I think that's correct, Your Honor. Would you be willing to take that case? I may, in fact, be, Your Honor. Pardon? I may, in fact, be, Your Honor. Yes. You're here pro bono at this time, right? Yes, Judge Kelley. All right. Thank you. Thank you, Your Honors. Your Honors, one of the things I would like to clarify, first of all, is I think that we're incorrectly assuming that Officer Jureen was putting these inmates together, in other words, to program together. If he had been, for example, if he let out two TSEP inmates. I don't think there's any evidence of that in the record. I think it was. We're no assumption on our part on that. Okay. I mean, I think we know what the evidence was. They came in two times separately. I mean, they didn't come in together. They were let in separately while he was out programming, right, to go to their cells. Correct. And based on that, as I said, Officer Jureen had a duty to order these newly assigned inmates to their cells. And Luna was in the shower. So, as I said, he was not putting them together. If he had been, you know, that could create a substantial risk of serious harm. But that was not the case. The other thing that the appellee's counsel, I think, failed to talk about was the second prong and how the district court erred on the second prong of qualified immunity. As I alluded to earlier, they erred on the clearly established law inquiry because the way they framed the issue was far too overbroad. State of Ford v. Ramirez-Palmer, and actually a recent case that we submitted to you, Brousseau v. Hagen, have established very clearly that we must look at the specific context of the case, that is, the facts at issue, when we're searching for what the clearly established law might be. Otherwise, the officer would have no notice that his conduct would be unlawful. So, based on that, we have to define the issue as such, whether ordering newly assigned inmates to their cells while Luna is showering is unlawful. The answer is no, and there's no clearly established law based on materially similar facts that would establish that. But, moreover, even if this court decides that Luna stated a constitutional violation, the first prong, and that the law was clearly established, the district court erred in yet a third way. All right, you need to wrap it up because I've been liberal with your time. Thank you, Your Honor. And you're already over that. As our final point, as we emphasized in our brief, the district court injected the subjective intent into qualified immunity, which we know from Saussure is an objective reasonableness standard. And Crawford L. v. Britton has said specifically, subjective intent is irrelevant for qualified immunity. All right, thank you. After the second prong. Okay. Yes, Your Honor. Thank you very much. All right, this matter will stand submitted.
judges: Bright, Tashima, Callahan